**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CASE NO.: 8:25-cv-00804-KKM-AEP**

TREVOR JARED SMITH,

     Plaintiff,

v.

ROBERT J. PERRAULT, JR and
the FLORIDA DEPARTMENT OF
FINANCIAL SERVICES,

     Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT FLORIDA DEPARTMENT
OF FINANCIAL SERVICES' MOTION TO DISMISS**

Plaintiff Trevor Jared Smith ("Smith"), by his undersigned counsel, respectfully files his Response in Opposition to Defendant Florida Department of Financial Services' ("DFS") Motion to Dismiss Plaintiff's Amended Complaint [DE 47] (the "Motion"), and in support thereof, states as follows:

## I.    **INTRODUCTION**

DFS requests the Court to dismiss this action based on the assertion that DFS cannot be sued for negligent investigation. It believes the claims are barred by Section 768.28 (Florida's sovereign immunity waiver statute). Indeed, DFS posits the Amended Complaint should be dismissed with prejudice because (i) Defendant Robert J. Perrault ("Perrault") acted with malice; (ii) there is no common law duty

of care that applies to how a government conducts a criminal investigation because that duty is owed to the public; (iii) the criminal investigations and pursuit of criminal complaints against Smith were purportedly a DFS "discretionary function" for which it has no tort liability; (iv) Smith's claim for damages is allegedly outside the scope of Florida's sovereign immunity waiver; and (v) Florida's "impact rule" bars Smith from recovering emotional distress damages against DFS. These positions are without merit and DFS' Motion should be denied.

## II.    FACTUAL BACKGROUND

Smith is an independent contractor for a roofing company, whose professional responsibilities substantially involved sales, as well as signing up potential customers that suffered hurricane damage to their roofs. *See* Am. Compl. [DE 28] at ¶ 1. Perrault believed Smith's sales activities were criminal in nature, and, on behalf of DFS, persuaded the Offices of the State Attorney for Hillsborough and Manatee County to prosecute Smith for serious felony crimes. *See id.* at ¶¶ 3, 5. In total, Smith faced significant prison time for crimes he did not commit, which were based on false facts orchestrated by Perrault on behalf of DFS. *See id.* at ¶ 2.

In reality, the factual bases for the felony criminal charges all stemmed from egregiously faulty investigations under the ultimate authority of DFS. *See id.* at ¶ 3. These investigations were nothing more than a house of cards waiting to collapse under DFS' watch. *See id.* at ¶ 3. The DFS probe involved instances where Perrault fabricated facts in an investigative report, appeared to pressure or persuade homeowners into believing they were victims of of fraud, and intentionally misled

2

the prosecuting attorney(s) into believing Smith committed felony crimes. *See id.* at ¶ 3. During Perrault's fallacious investigations, DFS failed to properly supervise him and Perrault's colleagues, resulting in DFS' negligent investigations concerning the Smith matter. *See id.* at ¶¶ 4 and 9. The style of the criminal cases were *State of Florida v. Trevor Jared Smith,* Case Nos. 2024CF008482 and 2024CF008483, (Hillsborough County) and Case No. 2024CF001269 (Manatee County) (the "Criminal Cases"). *See id.* at ¶ 4.

Part of the duties of DFS and Perrault are to investigate potential instances of insurance fraud and to refer such cases to the Office of the State Attorney for the applicable counties for review and prosecution. *See id.* at ¶ 5. Recognizing the cases had zero merit and were based on highly improper investigative work by Perrault and his colleagues, on behalf of DFS, the State of Florida quickly filed a Notice of *Nolle Prosequi* to abandon and dismiss each of the actions. *See id.* at ¶ 8. The State should not have filed the Criminal Cases in the first place. *See id.* at ¶ 8. Indeed, the Criminal Cases resulted in a final termination on the merits because the State learned no evidence existed to support the continued prosecution of these matters. *See id.* at ¶ 8.

### III.   LEGAL STANDARD FOR A MOTION TO DISMISS

When a defendant submits a motion to dismiss under Fed. R. Civ. P 12(b)(6), the court must determine whether the allegations in the complaint "plausibly suggest that the plaintiff has a right to relief . . . ." *See James River Ins. Co. v. Ground Down Eng'g, Inc.,* 540 F.3d 1270, 1274 (11th Cir. 2008). A motion to

dismiss for failure to state a claim tests merely the sufficiency of the complaint. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984), *superseded on other grounds in Chapman v. Dunn*, 129 F.4th 1307, 1318 n.7 (11th Cir. 2025). On a motion to dismiss, the Court must accept the facts pleaded "as true and constru[e] them in a light most favorable to the plaintiff." *See Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). The District Court should not ask whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence to prove the claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Critically, "a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Moreover, "when considering a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Phipps v. W.W. Contractors, Inc.*, 2013 WL 12394466, at *2 (M.D. Fla. Feb. 12, 2013).

Based on this standard, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Additionally, "a district court's discretion to dismiss a complaint without leave to amend is severely restricted by Fed. R. Civ. P. 15(a)." *Afrin v. Belk Inc.*, 2020 WL 10055348, at *1 (M.D. Fla. Mar. 20, 2020) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). Indeed, "[a] district court must permit a plaintiff at least one [amendment] before dismissing with prejudice if a more carefully drafted

4

complaint might state a claim." *Environmental Prot. Comm'n of Hillsborough Cnty., Florida v. Mercedes Benz USA, LLC,* 2023 WL 4678978, at *3 (11th Cir. July 21, 2023).

## IV.    ARGUMENT

**A.    The Complaint Sufficiently States Claims that DFS is Liable to Smith for its Negligent Investigation.**

While DFS argues that it cannot be held "vicariously liable" for the actions of Perrault based on his alleged malicious conduct (Motion at p. 5), DFS misses the mark because it was not just Perrault involved in the negligent investigations of Smith. DFS readily admits that it is comprised of "134 sworn law enforcement officers and 32 civil support staff members" (Motion at p. 2), not solely Perrault. Indeed, each and all of DFS's law enforcement employee(s) approving and/or involved in the faulty investigations, prosecutions, and arrest of Smith were negligent in verifying the truth of the facts underlying the investigations.

**(i)    DFS has a Statutory Duty to Conduct a Reasonable Investigation to Establish Reasonable Cause.**

Here, DFS has a statutory duty to ensure that "it has reasonable cause" prior to initiating an investigation against an individual. *See* Fla. Stat. § 624.317 ("[t]he department shall conduct such investigation as it deems necessary . . . pertaining to or affecting the insurance affairs of any agent, adjuster, insurance agency, customer representative, service representative, or other person subject to its jurisdiction, subject to the requirements of [FLA. STAT. § 626.601]"); FLA. STAT. § 626.601(1) ("[t]he department or office may thereafter initiate an investigation

5

of any such individual or entity if ***it has reasonable cause to believe*** that the individual or entity has violated any provision of the insurance code.") (emphasis added). This alone creates a statutory duty of care owed to Smith. It is axiomatic that DFS must conduct a reasonable initial inquiry into an individual subject to its jurisdiction to obtain reasonable cause as grounds to initiate an investigation. DFS failed to do precisely that here.

### (ii)   The Public Duty Doctrine Does not Bar Smith's Negligent Investigation Claims.

While DFS entirely omits its statutory obligation from its Motion, it argues that Smith's claims for negligent investigation fails because there is no common-law duty owed to Smith personally "to conduct a reasonable investigation." *See Staco v. Miami-Dade Cnty.*, 536 F. Supp. 2d 1301, 1306 (S.D. Fla. 2008); *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause."). DFS posits that this common-law duty falls under *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 920 (Fla. 1985) category II (enforcing the laws and police powers of the state) and is therefore owed to the public, not to Smith individually. However, the United States Court of Appeals for the Eleventh Circuit has flatly rejected this notion. Indeed, in *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) the Eleventh Circuit explained,

> Under [the public duty doctrine], "a governmental entity is not liable in tort for breaching a duty which the government owes to the public generally, as opposed to a special tort duty owed to a particular individual."

6

[*Seguine v. City of Miami*, 627 So. 2d 14, 15 (Fla. 3d DCA 1993)]. In *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010, 1015 (Fla.1979), however, the Florida Supreme Court **explicitly held that the public duty doctrine has no continuing vitality under Florida law subsequent to the effective date of Fla. Stat. § 768.28.** Despite this ruling, several Florida District Court of Appeal cases have continued to apply the public duty doctrine to bar tort liability for governmental acts. *See, e.g., Seguine*, 627 So.2d at 17. **However, no case has overruled Commercial Carrier and, in fact, in [Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 920 (Fla. 1985)], the Florida Supreme Court reaffirmed Florida's rejection of the public duty doctrine.**

*Id.*

In denying a Motion to Dismiss a claim for negligent training of law enforcement officers based on the public duty doctrine, this Court has further held that it is bound by the *Lewis* holding. *See Vasconez v. Hansell,* 871 F. Supp. 2d 1339, 1343 (M.D. Fla. 2012) ("[h]owever, in *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir.2001), the United States Court of Appeals for the Eleventh Circuit held that the public duty doctrine had not survived the enactment of Fla. Stat. § 768.28"). Indeed, despite the fact that it appears Florida Courts have dismissed tort claims based on the public duty doctrine since *Lewis*, the Eleventh Circuit's interpretation of "Florida law is just as authoritative as its interpretation of Federal Law." *Vasconez,* 871 F.Supp.2d at 1343; *see also Graves v. City of Miami,* 2014 WL 11878683, at *5 (S.D. Fla. Oct. 29, 2014) (applying *Lewis* and denying motion to dismiss claim for negligent training of law enforcement officers

because "[t]he Florida Supreme Court has held that the public duty doctrine has no continuing vitality in light of the enactment of the Florida law waiving sovereign immunity for state and local governments" and "no case has overruled *Commercial Carrier*"). Thus, the so-called public duty doctrine does not bar Plaintiff's negligent investigation claims against DFS.

### (iii) DFS's Charging Affidavits Placed Smith Within a Zone of Risk.

Even assuming, *arguendo, Trianon* category II bars Smith's negligence claims as the duty alleged to have been breached is owed to the public, Smith's negligence claims would survive nonetheless. Smith sufficiently pled that he was placed in a zone of risk[1] by virtue of the utterly fallacious DFS charging affidavits (the "Affidavits") that resulted in each wrongful criminal prosecution, thus creating a special duty on behalf of DFS which was owed to Smith.[2] Moreover, the filing of a false charging affidavit is an action that would also impose such a duty and governmental liability. Indeed, "[w]hen a defendant's conduct creates a foreseeable zone of risk, Florida law generally will recognize a duty upon the defendant to either lessen the risk or see that sufficient precautions are taken to

---

[1] Critically, "when an officer acts to enforce the law, Florida law has consistently recognized that a special relationship may arise between an officer and a tort victim when the officer's conduct creates a foreseeable zone of risk to a determinate individual or group." *Labance v. Dawsy*, 14 So. 3d 1256, 1259 (Fla. 5th DCA 2009).

[2] *See Wallace v. Dean,* 3 So. 3d 1035, 1047–48 (Fla. 2009) ("[a]ctivities falling within category II are generally owed to the public at large; however, the plaintiff must be given an opportunity to plead facts alleging that the governmental actor owed the alleged tort victim a "special duty of care" (i.e., to plead exceptions to the public-duty doctrine)" and noting that the zone of risk is one such exception). Additionally, the *Wallace* court emphasized that "taking persons into police *custody* [and] *detaining* them" are such special duties. *Id.* at 1048.

8

protect persons within that zone of risk from the harm that the risk poses." *Asprilla v. Trinidad*, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009). Moreover, ***"filing a charging affidavit would [create] a duty to exercise reasonable care in doing so because it is reasonably foreseeable that as a result of a false charging affidavit, the wrongly accused would be prosecuted***." *Id.* (emphasis added).

Given the flagrant false allegations of illegal conduct within the Affidavits, it was reasonably foreseeable that it would spurn Plaintiff's wrongful prosecutions discussed in the Amended Complaint. Thus, DFS owed Smith a duty to exercise reasonable care in procuring the factual basis for and ultimately filing the Affidavits to protect Smith from the risk of being falsely accused and wrongfully prosecuted. DFS breached this duty, resulting in Smith's economic, emotional, and physical damages. Therefore, Smith properly pled his negligent investigation claims.

### (iv)    Smith is Permitted to Plead in the Alternative.

Furthermore, even if Smith's theory of liability against DFS was based solely on Perrault's actions (which it is not), he would still be entitled to allege negligence claims against DFS while also alternatively alleging that Perrault acted maliciously. *See JI-EE Industry Co. v. Paragon Metals, Inc.*, 2010 WL 1141103, at *1 (S.D.Fla. Mar. 23, 2010) (pleading inconsistent or alternative legal theories is permissible). In fact, the court in *Johnson v. State Dept. of Health & Rehab. Services*, 695 So. 2d 927, 930–31 (Fla. 2d DCA 1997) dealt with this issue in the context of negligence

9

and malicious prosecution claims and the application of sovereign immunity. *Id.* In *Johnson*, the court held that for purposes of pleading, a Florida government agency can be held liable for negligent investigation while, at the same time, a plaintiff can plead a claim for malicious prosecution against the individuals involved with the investigation. *Id.* This is exactly what is alleged in the Amended Complaint.

Here, DFS, as a governmental department, did not conduct reasonable investigations regarding Smith, despite having a duty to do so for the reasons discussed above. DFS failed to accurately verify the facts underlying the investigations that resulted in the Affidavits. Indeed, as detailed in Smith's Amended Complaint, the alleged facts on which the investigations, the Affidavits, and the ultimate prosecutions of Smith were frivolous from the very beginning. After learning the true facts, the State filed a *Nolle Prosequi* in each criminal case. Therefore, DFS and its officers breached that duty, causing Smith to suffer damages. Therefore, Smith properly stated claims for negligent investigation against DFS. *See UDR of Tennessee, L.P. v. MDG Zaremba Sammytown, LLC*, 2014 WL 793341, at *4 (M.D. Fla. Feb. 27, 2014) ("[u]nder Florida law, the elements of a negligence cause of action are (1) legal duty owed by defendant to plaintiff; (2) breach of that duty by defendant; (3) an injury to plaintiff legally caused by defendant's breach; and (4) damages as a result of the injury.") (citations omitted); *Johnson*, 695 So. 2d at 930–31.

**(v)    DFS' Negligent Investigations of Smith was Not a Discretionary Planning Function Immune From Liability.**

In its Motion, citing to *Trianon,* 468 So. 2d at 920, DFS simply states that it cannot be held liable for negligent investigation because any investigation regarding alleged insurance fraud is a discretionary police power DFS function for which it is immune from liability. *See, e.g.,* Motion at p. 6. This contention is misguided and without merit. As the Florida Supreme Court stated in *Dep't of Health & Rehab. Services v. Yamuni,* 529 So. 2d 258, 259-60 (Fla. 1988), "the categories set out in *Trianon* ***offer only a rough guide to the type of activities which are either immune or not immune. The test for determining immunity, and for determining which category the activity falls into, is still Commercial Carrier's operational versus planning dichotomy.***" *Yamuni,* 529 So. 2d at 259-60 (emphasis added).

Indeed, only a State agency's discretionary planning activities are immune from tort liability. *See Commercial Carrier Corp. v. Indian River Cnty.,* 371 So. 2d 1010, 1020 (Fla. 1979) ("even absent an express exception in section 768.28 for discretionary functions, certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability"). Strikingly, DFS did not attempt to discuss or apply the factors Florida courts analyze when determining whether a State agency's action can be considered planning (which is immune from tort liability) or operational (which is not immune from tort liability). These factors include:

11

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved. (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision."

*Yamuni*, 529 So. 2d at 259-60.

Indeed, "if these preliminary questions can be clearly and unequivocally answered yes, then the challenged act is probably policy-making, planning, or judgmental activity which is immune from tort liability. ***If the answer to any of the questions is no, the activity is probably operational level which is not immune.***" *Id.* (emphasis added). The analysis is a fact intensive inquiry.

In *Aspirilla*, the court underscored the following, which is crucial for this case:

> Because the Court finds that as alleged the City's actions – or lack thereof – violated a duty of care to Asprilla sufficient to subject a private person to liability under the laws of Florida, the Court next examines whether the City's failure to notify the prosecuting authority of the false allegations constitutes a discretionary act for which the City would be immune from tort liability. In this context, a "discretionary" act is one which involves an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle the court in fundamental questions of policy and planning. An "operational" act is one not necessary to or inherent in policy, merely

> reflecting a secondary decision as to how those policies or plans will be implemented. When a member of a police department has knowledge that a false charging affidavit has been filed, the duty to disclose this knowledge to the prosecuting authority cannot be deemed by this Court to be a discretionary duty. If it were, members of the police department would be encouraged to remain silent in the face of a wrongful prosecution. Asprilla has adequately alleged a claim for negligence, and the alleged acts of the City are not discretionary in nature; therefore, the City's request that this Court dismiss Count V of the Complaint [for negligence] must be denied.

2009 WL 2151156, at *4 (internal quotations and citations omitted).

Here, DFS's negligent investigations into Smith, as pled, are operational activities subject to tort liability. The facts alleged in the Amended Complaint all point to liability for purposes of pleading claims for relief. DFS's decision to investigate a claim of potential insurance fraud does not change the course or direction of any DFS policy. Instead, such a decision to investigate merely implements a policy already in place. *See State, Dept. of Health & Rehab. Services v. Yamuni,* 498 So. 2d 441, 443–44 (Fla. 3d DCA 1986) ("decisions of HRS's caseworkers in carrying out an investigation, though affecting individual cases, could [hardly] change the course or direction of the protective services program provided by HRS" and "[t]hese decisions implement the policy decisions and objectives which have already been made by the legislature and HRS."). Furthermore, the law enforcement officers and civil support employees within DFS do not need policy expertise to determine whether a report of alleged insurance fraud has merit. *See id.* (". . . nor does a caseworker require policy expertise to

13

determine if a child abuse report is unfounded"). Investigations and the state employees that conduct the investigations "cannot be elevated to the level of policy-making or planning." *Yamuni*, 529 So. 2d at 260.

Like *Yamuni* and *Aspirilla*, DFS responded to reports of alleged insurance fraud and negligently investigated Smith. Such actions have plainly been found to be operational activities which are not immune from tort liability. Indeed, as demonstrated above, at least two of the above four factors ((2) and (3)) are answered in the negative. Thus, DFS' actions cannot rise to the level of planning activities that would be shielded from tort liability. Otherwise, no meaningful distinction would exist "between operational and planning level activity," which is the critical analysis this court should employ when evaluating waiver of sovereign immunity in this case. *Yamuni*, 529 So. 2d at 260; *Aspirilla*, 2009 WL 2151156, at *4. Since DFS' investigations cannot constitute a discretionary planning activity, Smith sufficiently stated claims for negligence.

### (vi) Smith's Damages Are Within the Scope of Florida's Sovereign Immunity Waiver and are not Barred by the Impact Rule.

Smith properly pled damages within the scope of Florida's sovereign immunity waiver as he alleged a "personal injury, wrongful death, or injury or loss of property as required by § 768.28 . . ." *Bonati v. State of Florida Agency for Health Care Admin.*, 2024 WL 4979484, at *5 (M.D. Fla. Dec. 4, 2024) (internal quotations and citations omitted). Indeed, Smith properly alleged that in addition to the substantial attorneys' fees he incurred to defend the meritless criminal

14

prosecution, he also incurred significant emotional distress (*i.e.*, the injury) from the underlying negligent investigations and unfounded criminal prosecutions. *See* Amended Complaint at ¶ 74. Since Smith alleged an injury and is not solely seeking economic damages, his damages here are within the scope of Florida's sovereign immunity waiver.

Moreover, Smith's claims for emotional distress damages is not barred by the impact rule.

> [Significantly,] Florida's version of the impact rule bars a claim for mental or emotional damages caused by a defendant's negligence unless (1) the plaintiff sustained a physical impact from an external source, (2) the claim arises from a situation in which the 'impact' requirement is relaxed and the plaintiff manifests a significant discernible physical injury or illness as a result of the emotional trauma, or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable.

*Pipino v. Delta Air Lines, Inc.*, 196 F. Supp. 3d 1306, 1315 (S.D. Fla. 2016). Indeed, the *Pipino* court emphasized the importance of *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846 (Fla. 2007) and highlighted the Florida Supreme Court's holding that "no physical injury is necessary to overcome the impact rule where the plaintiff sustains an impact or touching." *Pipino*, 196 F.Supp.3d at 1315 (citing *Willis*, 967 So. 2d at 850).

Moreover, the *Willis* court clarified that "for a plaintiff to have endured an impact or contact sufficient to render an action sustainable the plaintiff may meet rather slight requirements." *Willis*, 967 So. 2d at 850. By contrast, "the impact rule does not apply where emotional damages are a consequence of conduct that itself

15

is a freestanding tort apart from any emotional injury." *Hagan v. Coca-Cola Bottling Co.*, 804 So. 2d 1234, 1241 (Fla. 2001); *see also Tanner v. Hartog*, 696 So. 2d 705, 708 (Fla. 1997) (impact rule inapplicable to a negligent defamation claim where mental suffering was part of the claim); *Kush v. Lloyd*, 616 So. 2d 415, 422 (Fla. 1992) (same).

Here, Smith properly alleged that as a result of DFS's negligent investigations he was arrested, deprived of his liberty, his freedom was harmed, and he was forcibly restrained in violation of the Fourth Amendment. *See* Am. Compl. at ¶¶ 4, 35, 81. Indeed, inherent in these allegations is the fact that Smith was placed in handcuffs, put in the back of a police car, then transported and booked into jail in Hillsborough County and Manatee County, which is what occurred. *See Phipps*, 2013 WL 12394466, at *2 ("when considering a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff.") Therefore, Smith specifically pled an impact and/or touching that negates the application of the impact rule. *See Goosby v. Branch Banking & Tr. Co.,* 2017 WL 10442008, at *6 (S.D. Fla. Dec. 20, 2017) (finding the impact rule had been met where the Plaintiff was "arrested, placed in handcuffs in the rear of a police car without air conditioning, and transported to a Miami-Dade County jail"). Alternatively, the impact rule does not apply because the emotional harm stemmed from an independent tort. Regardless, Smith sufficiently pled claims for negligent investigation, and thus, this Court should deny DFS' Motion.

### (vii) Smith Should Be Given Leave to Amend the Operative Complaint if the Court Believes Pleading Deficiencies Exist.

As explained in detail above, Smith properly pled his negligent investigation claims against DFS, which fall within Florida's sovereign immunity waiver. However, to the extent that the Court believes pleading deficiencies exist concerning the claims against DFS, Smith requests leave to amend. Critically, Rule 15(a) of the Federal Rule of Civil Procedure mandates "leave to amend a complaint should be freely given when justice so requires." *Reynolds v. City of Daytona Beach*, 2019 WL 2412433, at *14 (M.D. Fla. May 22, 2019), *report and recommendation adopted*, 2019 WL 2411537 (M.D. Fla. June 7, 2019). While leave to amend may be denied based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment," none of these circumstances exist here. *Id.*

In this case, any amendment (if needed in the first place) would not be futile. Smith already alleged sufficient facts to properly state claims for negligent investigation against DFS. He certainly can allege additional details to the extent the Court believes it is necessary. Furthermore, there has neither been prejudice, undue delay, dilatory motive, and/or bad faith in seeking an amendment (if even necessary), nor has there been repeated failures to correct deficiencies. While Smith asserts the claims against DFS are properly pled, if this Court disagrees, he

17

should be given leave to amend the claims to correct any deficiencies the Court identifies. *See Environmental. Prot. Comm'n of Hillsborough Cnty.,* 2023 WL 4678978, at *3.

## V.  CONCLUSION

Based on the foregoing, Plaintiff Trevor Jared Smith respectfully requests that this Honorable Court enter an Order (i) denying Defendant Florida Department of Financial Services' Motion to Dismiss the Amended Complaint; and (ii) requiring DFS to file and Answer to the Amended Complaint; or alternatively, but only to the extent the Court believes there are pleading deficiencies with the claims against DFS, (iii) granting Smith leave to amend.

Dated: March 6, 2026

Respectfully submitted,

**SHAPIRO, BLASI, WASSERMAN**
**& HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722

By: */s/ Joshua B. Alper*
Joshua B. Alper, Esq.
Florida Bar No. 59875
Primary E-Mail: jalper@sbwh.law
Secondary E-Mail: crestivo@sbwh.law

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 6, 2026, a true and correct copy of the foregoing document has been electronically filed with the Clerk of Court using CM/ECF and is being served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record.

By:   */s/ Joshua B. Alper*
Joshua B. Alper

19