## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TREVOR JARED SMITH,

     Plaintiff,

v.                                                      Case No. 8:25-cv-804-KKM-AEP

ROBERT J. PERRAULT, JR.,
and FLORIDA DEPARTMENT
OF FINANCIAL SERVICES,

     Defendants.

_____

## <u>ORDER</u>

Plaintiff Trevor Smith sues Robert Perrault, Jr., for malicious prosecution, and the Florida Department of Financial Services (DFS) for negligent investigation related to three ensuing criminal prosecutions against Smith. Am. Compl. (Doc. 28) ¶¶ 77–151. DFS moves to dismiss the three negligent investigation claims for failure to state a claim and as barred by sovereign immunity. MTD (Doc. 47). For the reasons explained below, I grant DFS's motion but permit Smith an opportunity to amend his complaint.

## I.    BACKGROUND

DFS is a Florida executive agency headed by the State's Chief Financial Officer and comprised of multiple divisions, including a Division of Criminal Investigations. §§ 20.121(1)–(2), Fla. Stat. The Division of Criminal

Investigations "function[s] as a criminal justice agency" with authority to initiate investigations into matters within DFS's jurisdiction. *Id.* § 20.121(2)(e). The Bureau of Insurance Fraud (BIF) resides within the Division of Criminal Investigations and is responsible for investigating violations of Florida's insurance code, including allegations of homeowners' insurance fraud. *See* Am. Compl. ¶ 132. Defendant Perrault worked as a detective in the BIF, where he investigated potential insurance fraud and referred matters to the Office of the State Attorney for potential prosecution. *Id.* ¶¶ 5, 82.

Beginning in November 2022, Perrault conducted three undercover investigations into Smith's work as an independent door-to-door salesman for a licensed roofing company. Am. Compl. ¶¶ 1, 36–38, 45, 54. In his role, Smith "sign[ed] up potential customers that suffered hurricane damage to their roofs," all of whom "had property damage coverage under their homeowners' insurance policies." *Id.* ¶ 1. Perrault authored three affidavits alleging that, among other things, Smith acted as a public adjuster (without a license) and initiated a fraudulent insurance claim on behalf of a homeowner. *Id.* ¶¶ 36–38, 47–48, 56–57. According to Smith, Perrault intentionally conducted "utterly fallacious investigations," "pressured homeowners into believing they were victims of fraud," and fabricated the allegations against Smith as part of a

scheme to "curry favor with the insurance industry for [Perrault's] own professional benefit." *See, e.g.*, *id.* ¶¶ 3–7.

Based on Perrault's affidavits, the State brought criminal charges against Smith. *Id.* ¶¶ 39, 48, 57. But after "the true facts were uncovered as part of the discovery process," Florida "quickly filed Notices of *Nolle Prosequi* to abandon and dismiss the actions." *Id.* ¶ 8. Ultimately, "all three Criminal Cases resulted in final terminations on the merits because the State learned no evidence existed to support the continued prosecution of these matters." *Id.* Smith sues Perrault under 42 U.S.C. § 1983, alleging malicious prosecution in violation of the Fourth Amendment. *Id.* ¶¶ 77–127.

After providing the required pre-suit notice of claim under § 768.28(6), Florida Statutes, Smith added DFS to this suit. *See* (Docs. 26, 28). Smith alleges three counts of negligent investigation against DFS, claiming that "DFS failed to properly supervise [Perrault] and was at least negligent in the Smith investigations." Am. Compl. ¶ 4. More specifically, "DFS breached its duty owed to Smith by failing to conduct a diligent and proper investigation into the veracity of the facts related to the [three criminal prosecutions], including the information provided by Perrault" on behalf of DFS "to ensure probable cause existed prior to referring Smith for prosecution." *Id.* ¶¶ 134, 142, 150.

DFS moves to dismiss Smith's claims as barred by sovereign immunity. DFS also argues that Smith fails to state a claim for negligent investigation and seeks impermissible relief. *See* MTD. Smith opposes dismissal and requests leave to file an amended complaint if necessary. Resp. (Doc. 49).

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual

4

allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.    ANALYSIS

DFS first argues that Smith's claims are "barred by sovereign immunity because (1) the discretionary conduct at issue in this case 'is not the type of conduct that gives rise to a valid cause of action against a public agency'; and (2) there is no common law duty of care applicable to how a governmental entity exercises its power to enforce laws." MTD at 6 (quoting *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919–20 (Fla. 1985)). DFS also contends that it cannot be held liable for Perrault's intentional conduct, and that Smith cannot recover economic damages on his negligence claim. *See id.* at 9–15. The duty of care argument proves dispositive.

"When addressing the issue of governmental liability under Florida law, [the Florida Supreme Court has] repeatedly recognized that a duty analysis is *conceptually distinct* from any later inquiry regarding whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes." *Wallace v. Dean*, 3 So. 3d 1035, 1044 (Fla. 2009). "Under traditional principles of tort law, the absence of a duty of care between the defendant and the plaintiff results in *a lack of liability*, *not* application of immunity from suit." *Id.* Thus, "[i]f no duty of care is owed with respect to alleged negligent conduct, then there is no

5

governmental liability, and the question of whether the sovereign should be immune from suit need not be reached." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004) (per curiam); *see, e.g.*, *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003) (identifying the duty of care as the first required element of a negligence claim).

"Conversely, sovereign immunity may shield the government from an action in its courts (i.e., a lack of subject-matter jurisdiction) even when the State may otherwise be liable to an injured party for its tortious conduct." *Wallace*, 3 So. 3d at 1044 (citation modified). Accordingly, "if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty." *Pollock*, 882 So. 2d at 933. In that case, "the court must then determine whether the challenged act or acts were 'discretionary' in nature, and not merely 'operational.'" *Mosby v. Harrell*, 909 So. 2d 323, 327 (Fla. 1st DCA 2005) (quoting *Henderson v. Bowden*, 737 So. 2d 532, 534 (Fla. 1999)). Discretionary acts are protected by sovereign immunity, whereas operational acts are not. *Pollock*, 882 So. 2d at 933.

### A. Duty of Care

Turning to the threshold question of duty on Smith's negligence claim, DFS asserts that "there is no common law duty of care applicable to how a governmental entity exercises its power to enforce laws." MTD at 6. Smith disagrees, asserting that DFS had both a statutory and common law duty "to

6

properly evaluate the veracity of the facts" sworn by Perrault before referring the case for prosecution. *See* Am. Compl. ¶¶ 130, 138, 146; Resp. at 5–9. DFS has the better of the two positions.

To start, the Florida legislature has waived sovereign immunity for the State, its agencies, and its subdivisions in tort actions, rendering the State responsible "in the same manner and to the same extent as a private individual under like circumstances." § 768.28(5)(a), Fla. Stat. Thus, "there can be no governmental liability unless a common-law or statutory duty of care existed that would have applied to an individual under like circumstances." *Wallace*, 3 So. 3d at 1046; *see id.* at 1047 (recognizing four bases for imposing a duty: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case").

In *Trianon Park*, the Florida Supreme Court provided a general guide of activities that either support or fail to support the recognition of a duty of care between a governmental actor and an alleged tort victim: "(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of . . . citizens." 468 So. 2d at 919. Under the so-called public-duty doctrine, activities in the second category "are

generally owed to the public at large" and thus do not establish a duty owed to specific individuals. *See Wallace*, 3 So. 3d at 1047; *see id.* at 1048 n.22 (explaining that the doctrine applies to "enforcement of the criminal law (e.g., the decision of whether to arrest a suspect or whether to enforce a particular law in a given situation)"); *Pollock*, 882 So. 2d at 935 ("Patrolling the state highways, controlling the flow of traffic, and enforcing the traffic laws are duties [the Florida Highway Patrol] owes to the general public, as opposed to an individual person."); *Trujillo v. Fla. Agency for Health Care Admin.*, No. 08-22264-CIV, 2009 WL 10697035, at *4 (S.D. Fla. May 6, 2009) (finding that actions taken to enforce Florida's Medicaid rules, including the government's "investigation, [the plaintiff's] arrest[,] and prosecution . . . . fall squarely within *Trianon*'s category II"). Ultimately, "there has never been a common law duty of care" for how the government "exercises its discretionary power to enforce compliance with [its] laws." *Trianon Park*, 468 So. 2d at 919.

That said, a plaintiff "must be given an opportunity to plead facts alleging that the governmental actor owed the alleged tort victim a *special duty of care*." *Wallace*, 3 So. 3d at 1047–48 (citation modified). A special duty of care "arises when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' [1] by creating or permitting dangers to exist, [2] by taking persons into police custody, [3] detaining them, or [4] otherwise subjecting them to danger." *Id.* at 1048

8

(quoting *Pollock*, 882 So. 2d at 935) (citation modified); *see id.* at 1048 n.23 (collecting cases showing "law-enforcement activities creating a zone of risk that affects a determinate individual or group," including detaining an individual during a traffic stop, conducting a high-speed chase, and supervising an escaped convict in a hospital emergency room).

With this framework in view, Smith first claims that "DFS has a statutory duty to ensure that 'it has reasonable cause' prior to initiating an investigation against an individual." Resp. at 5 (quoting § 624.317, Fla. Stat.); *see also* § 626.601(1), Fla. Stat. (permitting DFS to launch an investigation "if it has reasonable cause to believe that the individual . . . has violated any provision of the insurance code"). More broadly, though, DFS is tasked with enforcing Florida's insurance laws and may "inquire into any alleged improper conduct of any [listed individual or entity] under this code." § 626.601(1), Fla. Stat. Read in context, "[t]his statutory duty is clearly a codified general duty to enforce the law—namely, Florida's insurance code—that DFS owes to the general public rather than to an individual." *Black v. Perrault*, No. 8:25-CV-01466-WFJ-CPT, 2026 WL 772470, at *3 & n.2 (M.D. Fla. Mar. 19, 2026); *Roman v. Perrault*, No. 8:25-CV-1261-WFJ-CPT, 2026 WL 936528, at *2 (M.D. Fla. Apr. 7, 2026) (same). Smith's complaint appears to concede as much, alleging that "DFS owed a duty to Smith, as with all citizens of Florida, to perform an investigation with diligence." Am. Compl. ¶ 129. Accordingly,

Smith does not persuade that the "reasonable cause" investigative standard creates a duty owed to him individually—rather than to the public—by DFS.

Nor does Smith's complaint fairly allege that DFS owed him a common law "special duty of care" necessary to avoid application of the public-duty doctrine. On this front, Smith theorizes "that he was placed in a zone of risk by virtue of the utterly fallacious DFS charging affidavits . . . that resulted in each wrongful criminal prosecution." Resp. at 8; *see, e.g.*, Am. Compl. ¶ 134 (alleging that DFS "fail[ed] to conduct a diligent and proper investigation into the veracity of the facts" sworn to by Perrault "prior to referring Smith for prosecution"). To be sure, a special duty triggers "when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." *Pollock*, 882 So. 2d at 935. But here, unlike in other cases where law enforcement action placed an individual in physical danger, "DFS never took [Smith] into custody, detained him, or otherwise subjected him to danger." *Black*, 2026 WL 772470, at *4.

On similar facts, courts have rejected extension of the common law "zone of risk" to cover the initiation of criminal investigations or the submission of materials to prosecuting authorities. *See Trujillo*, 2009 WL 10697035, at *5 (finding that "the zone of risk cases simply do not apply" to allegations that a

law enforcement agency's "reckless and/or deliberately indifferent behavior permitted an illegitimate investigation and criminal prosecution to go forward that imperiled her employment and reputation"); *Hickman v. Barclay's Int'l Realty, Inc.*, 16 So. 3d 154 (Fla. 4th DCA 2009) (rejecting a "zone of harm" argument because "Florida courts have never recognized a separate tort for negligently swearing out a warrant for arrest") (citation modified); *cf. Bush v. City of Daytona Beach*, No. 6:12-CV-1541-ORL-36, 2013 WL 3209430, at *5 (M.D. Fla. June 24, 2013) ("There is no legal duty of care to the person who is the subject of a criminal investigation.").

Finally, although Smith cites limited authority for the proposition that "[d]iscovery of evidence establishing the falsity of a charging affidavit prior to the prosecuting authority filing charges would create a duty to disclose this evidence either to lessen the risk of, or to protect from, an improper prosecution," *Asprilla v. Trinidad*, No. 609-CV-101-ORL-28KRS, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009), his complaint does not allege as much. Smith does not allege "any facts showing that DFS knew about deficiencies in the charging affidavit and then subsequently failed to notify the prosecuting authority." *Black*, 2026 WL 772470, at *4; *see Glenney v. Forman*, 936 So.2d 660, 662 (Fla. 4th DCA 2006) (explaining that a governmental official owes a special duty to act when he uncovers mistakes in governmental records that

11

might have adverse consequences for the plaintiff). On the facts alleged, Smith does not establish that DFS owed him a special duty of care.

Although it appears unlikely that Smith can allege either that DFS placed him in a "zone of risk" of physical harm or that DFS independently knew of the falsity of Perrault's affidavits, I cannot conclude that amendment would be futile. I therefore dismiss the claims without prejudice and grant Smith leave to file an amended complaint.

### B. Sovereign Immunity

Because Smith fails to allege that there is either a statutory or common law duty of care "owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached." *Pollock*, 882 So. 2d at 932; *see Black*, 2026 WL 772470, at *5 (declining to reach sovereign immunity). I do not address DFS's secondary argument that it is "not liable in tort for the acts or omissions of an officer, employee, or agent committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." MTD at 10 (citing § 768.28(9)(a), Fla. Stat.) (citation modified).

## IV.   CONCLUSION

Smith's complaint fails to allege that DFS owed him a duty of care in overseeing his criminal investigation and thus does not state a negligence claim. Accordingly, the following is **ORDERED**:

1. The Florida Department of Financial Services' Motion to Dismiss (Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**.

2. Smith's claims for negligent investigation in Counts IV, V, and VI of the Amended Complaint (Doc. 28) are **DISMISSED WITHOUT PREJUDICE**.

3. No later than **May 29, 2026**, Smith may file a second amended complaint. Smith's second amended complaint may not add or modify the claims against Perrault. If Smith fails to file a second amended complaint, the Florida Department of Financial Services will be terminated from the action, and the remaining counts will proceed against Perrault.

4. All defendants must file a responsive pleading no later than **June 12, 2026**.

**ORDERED** in Tampa, Florida, May 15, 2026.

Kathryn Kimball Mizelle
United States District Judge

13