**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TREVOR JARED SMITH,

Plaintiff,

v. Case No. 8:25-cv-804-KKM-AEP

ROBERT J. PERRAULT, JR.,
and FLORIDA DEPARTMENT
OF FINANCIAL SERVICES,

Defendants.

---

**ORDER**

Trevor Smith sues the Florida Department of Financial Services (DFS) for negligent investigation and Robert Perrault, Jr., for malicious prosecution related to three criminal prosecutions against Smith. Second Am. Compl. (Doc. 57) ¶¶ 76–153. DFS previously moved to dismiss Smith's claims against it, *see* Motion (Doc. 47), and I granted that motion, but permitted Smith another chance to amend his complaint. *See generally* Order (Doc. 56). DFS now moves to dismiss the claims against it in Smith's revised complaint for the same reasons: that Smith fails to state a claim against DFS and that Smith's claims are barred by sovereign immunity. MTD (Doc. 59) at 1–3; *see generally* Order. As explained below, because Smith once again fails to plausibly allege

that DFS owed a duty to him, I grant DFS's motion and now dismiss the claims against DFS with prejudice.

## I. BACKGROUND

DFS is a Florida executive agency headed by the State's Chief Financial Officer comprising multiple divisions, including a Division of Criminal Investigations. §§ 20.121(1)–(2), Fla. Stat. The Division of Criminal Investigations "function[s] as a criminal justice agency" with authority to initiate investigations into matters within DFS's jurisdiction. *Id.* § 20.121(2)(e). The Bureau of Insurance Fraud (BIF) resides within the Division of Criminal Investigations and is responsible for investigating violations of Florida's insurance code, including allegations of homeowners' insurance fraud. *See* Second Am. Compl. ¶¶ 1–2, 12. Perrault worked as a detective in the BIF, where he investigated potential insurance fraud and referred matters to the Office of the State Attorney for potential prosecution. *Id.* ¶¶ 1–2, 12, 81.

Beginning in November 2022, Perrault conducted three undercover investigations into Smith's work as an independent door-to-door salesman for a licensed roofing company. *Id.* ¶¶ 34–37, 44–47, 53–56. In his role, Smith "sign[ed] up potential customers that suffered hurricane damage to their roofs," all of whom "had property damage coverage under their homeowners' insurance policies." *Id.* ¶ 3. Perrault authored three affidavits alleging that,

among other things, Smith acted as a public adjuster (without a license) and initiated a fraudulent insurance claim on behalf of a homeowner. *Id.* ¶¶ 36–37, 46–47, 55–56. According to Smith, Perrault intentionally conducted "utterly fallacious investigations," "pressured homeowners into believing they were victims of fraud," and fabricated the allegations against Smith as part of a scheme to "curry favor with the insurance industry for [Perrault's] own professional benefit." *See, e.g.*, *id.* ¶¶ 10–11, 14.

Based on Perrault's affidavits, the State brought criminal charges against Smith. *Id.* ¶¶ 37, 47, 56. But after "the true facts . . . were uncovered as part of the discovery process," Florida "quickly filed Notices of *Nolle Prosequi* to abandon and dismiss the actions." *Id.* ¶ 15. Ultimately, "all three of the Smith Criminal Cases resulted in final terminations on the merits because the State learned no evidence existed to support the continued prosecution of these matters." *Id.* Smith sues Perrault under 42 U.S.C. § 1983, alleging malicious prosecution in violation of the Fourth Amendment. *Id.* ¶¶ 76–126.

After providing the required pre-suit notice of claim under § 768.28(6), Florida Statutes, Smith added DFS to this suit. *See* Notice (Doc 26-1); Second Am. Compl. ¶¶ 17–18. Smith alleges three counts of negligent investigation against DFS, claiming that "DFS failed to properly supervise Perrault and was at least negligent in the Smith investigations." Second Am. Compl. ¶ 11. More

specifically, "DFS breached its duty owed to Smith by failing to conduct a diligent and proper investigation into the veracity of the facts related to the [three criminal prosecutions], including the information provided by Perrault" on behalf of DFS "to ensure probable cause existed prior to referring Smith for prosecution." *Id.* ¶¶ 134, 143, 152. And Smith alleges—without any factual details—that DFS "knew [the information relayed to prosecutors] was false" and the investigation "fruitless" but provided the information anyway. *Id.* ¶¶ 14, 128–30, 137–39, 146–47. And, because DFS knowingly shared this false information, Smith "was arrested, taken into police custody, detained, and jailed." *See e.g.*, *id.* ¶ 11.

DFS again moves to dismiss Smith's claims with prejudice, arguing that Smith fails to state a claim for negligent investigation because DFS owes Smith no duty and because the claims are barred by sovereign immunity. *See generally* MTD. Smith opposes dismissal but requests leave to file a third amended complaint, if necessary. Resp. (Doc. 60).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.*

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But when "allegations are indeed more conclusory than factual," courts need not "assume their truth." *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (warning that "legal conclusions masquerading as facts will not prevent dismissal" of a complaint).

## III. ANALYSIS

As before, DFS argues (1) that Smith "fails to identify any specific facts that could, if true, establish that DFS owed a specialized duty of care" to Smith and (2) that, even if a duty existed, Smith's "claims against DFS would still be barred by sovereign immunity." MTD at 2. And once again, the duty of care

argument proves dispositive, as Smith fails to plausibly state a claim with factual—and not conclusory—allegations that DFS owed a duty.

Under Florida law, to evaluate a government entity's liability, courts must first determine if a duty is owed before evaluating if the entity is immune from any liability arising from that duty. *See* Order at 5–6 (citing *Wallace v. Dean*, 3 So. 3d 1035, 1044 (Fla. 2009)). And if no duty exists, that ends the inquiry; there is no liability in negligence. *See id.* at 6 (citing *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004) (per curiam); *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)).[1]

Governmental entities bear duties of care only "in the same manner and to the same extent as a private individual under like circumstances." § 768.28(5)(a), Fla. Stat. That means "there can be no governmental liability unless a common-law or statutory duty of care existed that would have applied to an [non-governmental entity] under like circumstances." *Wallace*, 3 So. 3d at 1046; *see id.* at 1047. And under the so-called public-duty doctrine, actions taken to enforce the law or protect the public, *see Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985), including criminal investigations and the decision to arrest a suspect, "are generally owed to the public at large" and do not establish a duty to an individual, s*ee Wallace*, 3 So.

---

[1] As explained in this order, because DFS owed no duty to Smith, I do not decide whether sovereign immunity would independently bar Smith's claims.

3d at 1047; *see id.* at 1048 n.22 (explaining that the doctrine applies to "enforcement of the criminal law"); *Pollock*, 882 So. 2d at 935; *Florez v. Broward Sheriff's Off.*, 270 So. 3d 417, 420 (Fla. 4th DCA 2019) ("[I]t is well established that the government does not owe individual citizens a common law duty to convey accurate information."); *Trujillo v. Fla. Agency for Health Care Admin.*, No. 08-22264-CIV, 2009 WL 10697035, at *4 (S.D. Fla. May 6, 2009). In general, then, Florida law recognizes no duty of care in government law enforcement activities. *See* Order at 8 (citing *Trianon Park*, 468 So. 2d at 919).

But a plaintiff can still invoke an exception to the general no duty rule by alleging "that the governmental actor owed the alleged tort victim a *special duty of care*." *Wallace*, 3 So. 3d at 1047–48 (citation modified). Such a duty "arises when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' [1] by creating or permitting dangers to exist, [2] by taking persons into police custody, [3] detaining them, or [4] otherwise subjecting them to danger." *Id.* at 1048 (quoting *Pollock*, 882 So. 2d at 935) (citation modified); *see id.* at 1048 n.23 (collecting cases showing "law-enforcement activities creating a zone of risk that affects a determinate individual or group," including detaining an individual during a traffic stop, conducting a high-speed chase, and supervising an escaped convict in a hospital emergency room).

To start, Smith provides no basis to conclude that DFS owed an ordinary statutory or common-law duty to Smith. *See* Resp. at 7–8; Order at 9 (rejecting the same argument to like allegations); *Black v. Perrault (Black I)*, No. 8:25-CV-01466-WFJ-CPT, 2026 WL 772470, at *3 (M.D. Fla. Mar. 19, 2026) (similar). At no point does Smith point to a viable duty that individuals ordinarily owe to one another that DFS would likewise owe here. *See* Order at 9; § 768.28(5)(a), Fla. Stat. Nor could he, as ordinary citizens owe no common-law or statutory duty to enforce the law because "[t]he enforcement of laws is a function of the executive branch of [Florida's] government." *See Lightsey Cattle Co. v. Fla. Fish & Wildlife Conservation Comm'n*, 413 So. 3d 182, 187 (Fla. 6th DCA 2024) (quoting *Tyson v. Viacom, Inc.*, 760 So. 2d 276, 277 (Fla. 4th DCA 2000)). Instead, Smith ultimately rests any duty that DFS owed here on an exception to the general no duty rule, by claiming that DFS took on a special duty as to Smith. *See* Resp. at 8–12; *Black v. Perrault (Black II)*, No. 8:25-CV-01466-WFJ-CPT, 2026 WL 1792883, at *3 (M.D. Fla. June 23, 2026) (explaining that under Florida law when no general duty of care is alleged, courts need determine only if an exception—like the "zone of risk" theory of duty—triggers a duty on a case's unique facts).

Smith's arguments that DFS took on a special duty reduce to two points: that DFS "placed [Smith] in a zone of risk" by (1) knowingly sharing "utterly fallacious [] charging affidavits . . . that resulted in [each] wrongful criminal

prosecution" and (2) that DFS' actions led to Smith falling "into police custody." *See* Resp. at 8–11; Second Am. Compl. ¶¶ 134, 143, 152 (alleging that DFS "fail[ed] to conduct a diligent and proper investigation into the veracity of the facts" sworn to by Perrault "prior to referring Smith for prosecution"); *id.* ¶ 11 (alleging that Smith "was arrested, taken into police custody, detained, and jailed."). Although a special duty may trigger "when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger," *see* Order at 10 (quoting *Pollock*, 882 So. 2d at 935), Smith's complaint fails to provide any non-conclusory allegations that plausibly establish that DFS—and not some other third-party—took on such a duty here.

Smith first fails to plausibly allege that DFS owed a special duty to Smith in the investigation or the submission of materials to prosecutors. To begin, neither a criminal investigation nor the submission of investigative materials alone creates a common-law duty through a "zone of risk." *See* Order at 10–11 (collecting cases rejecting such a broad zone of risk theory). Recognizing as much, Smith instead offers that knowingly carrying out a false investigation or knowingly submitting false charging affidavits "create[s] a duty to disclose this evidence either to lessen the risk of, or to protect from, an improper prosecution." *See* Resp. at 9 (quoting *Asprilla v. Trinidad*, No. 609-

CV-101-ORL-28KRS, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009). Even assuming knowingly conducting a false investigation establishes a zone of risk, Smith "has made no *factual* allegations that DFS actually discovered or always knew the affidavit was false" such that DFS placed Smith in harm's way. *See Black II*, 2026 WL 1792883, at *4; *see also Glenney v. Forman*, 936 So.2d 660, 662 (Fla. 4th DCA 2006) (explaining that a governmental official owes a special duty to act when he uncovers mistakes in governmental records that might have adverse consequences for the plaintiff). Instead, the complaint posits "conclusory" rather than "factual" allegations that DFS *knew* the investigation to be empty or uncovered that the charging affidavits were false when it turned those documents over to prosecutors. *See Chaparro*, 693 F.3d at 1337. To be sure, Smith alleges that the facts in the charging affidavit were "false," the investigation "fruitless," and that DFS handed these hollow documents to prosecutors. *See, e.g.*, Second Am. Compl. ¶¶ 6, 9, 11, 45. But Smith provides no support—beyond just "unadorned" DFS knew the investigation was false "allegations," *see Iqbal*, 556 U.S. at 678—to plausibly conclude that DFS was "aware of" the charging document's falsity and would thus bear "a duty to act non-negligently." *See Black II*, 2026 WL 1792883, at *4; Second Am. Compl. ¶¶ 6, 9, 11, 45. Without more, all that Smith has alleged is that DFS investigated Smith and turned over documents to prosecutors that turned out to be false. And that is insufficient to establish a special tort duty that DFS

owed to Smith. *See Black II*, 2026 WL 1792883, at *4 (citing *Roman v. Perrault*, No. 8:25-CV-1261-WFJ-CPT, 2026 WL 936528, at *3 (M.D. Fla. Apr. 7, 2026)); Order at 10–11 (rejecting such an argument); *Florez*, 270 So. 3d at 420.

Smith's alternative duty theory—that DFS placed Smith in danger by taking steps that inevitably led to Smith being taken into custody—fairs no better. Smith alleges that "[he] was arrested, taken into police custody, detained, jailed, and prosecuted based on . . . [the] purported facts DFS" turned over to prosecutors. *See* Second Am. Compl. ¶¶ 11, 128, 137, 146. Tellingly, Smith's allegation uses the passive voice and thereby "pulls the actor" that directly locked Smith up "off the stage". *Cf. Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023) (explaining how passive voice obscures the person completing the relevant action). Read in contrast to the many conclusory allegations that DFS directly harmed Smith, this sole passive allegation supports that someone other than DFS, like the prosecutor's office or arresting officers, placed Smith in harm's way and that "DFS never took [Smith directly] into custody, detained him, or otherwise subjected him to danger." *Black I*, 2026 WL 772470, at *4; *see also* Resp. at 18 (arguing that "as a result of DFS's negligent investigation he was arrested, taken into police custody, detained, and jailed," not that DFS took such actions). Because under Florida law indirect involvement in causing another's custody or prosecution is insufficient

to establish a special duty, *see Wallace*, 3 So. 3d at 1048, Smith's alternative theory of duty also fails.

Last, after rejecting that Smith has plausibly alleged that DFS owed him a duty, I reject Smith's alternative request for leave to amend his complaint for a third time. *See* Resp. at 19–20. In the light of Smith's multiple attempts to plausibly plead his claims against DFS and Smith's failure to provide any insight as to what additional facts he could allege to make his claim that DFS owed a duty plausible, I conclude that amendment would be futile as Smith provides no indication that he could plead facts that would plausibly establish that DFS owed him a duty. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). I dismiss Smith's claims against DFS with prejudice for futility. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102–03 (11th Cir. 2021) (upholding dismissal with prejudice when any amendment would be futile).

## IV. CONCLUSION

Once more, I conclude that Smith fails to plausibly allege that DFS owed him a duty of care in overseeing his criminal investigation and thus does not state a negligence claim. I also conclude that further amendment would be futile. Accordingly, the following is **ORDERED**:

1. The Florida Department of Financial Services' Motion to Dismiss (Doc. 59) is **GRANTED**.

2. Smith's claims for negligent investigation in Counts IV, V, and VI of the Second Amended Complaint (Doc. 57) are **DISMISSED WITH PREJUDICE**.

3. The clerk is directed to **TERMINATE** The Florida Department of Financial Services from this action**.**

**ORDERED** in Tampa, Florida, October 1, 2026.

Kathryn Kimball Mizelle
United States District Judge